UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   11/21/2022

            -against-

90-CR-861 (KMW)

**OPINION & ORDER**

JUAN DIAZ,

               Defendant.

--------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

Defendant Juan Diaz ("Diaz"), proceeding *pro se*, moves for compassionate release

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Def.'s Mot., ECF No. 33.)  Diaz argues that he should

be released because: (1) he has rehabilitated himself; (2) he suffers from "aging medical

problems" that put him at heightened risk from COVID-19; and (3) if he "were convicted today,

he would only be subject to the 20-year statutory maximum relating to his convictions for

second-degree murder."  (*Id.* at 6–10.)  The Government opposes Diaz's motion.  (Gov't Opp'n,

ECF No. 38.)  For the reasons below, Diaz's motion for compassionate release is DENIED.

**BACKGROUND**

Diaz is serving three concurrent terms of life imprisonment for (1) conspiring to

distribute and to possess with the intent to distribute more than one kilogram of heroin, in

violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846, and (2) two counts of

committing murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959, otherwise

known as the Violent Crimes in Aid of Racketeering Activity Act ("VCAR").  (ECF No. 22; *see*

*also* Trial Tr. 1206:25, ECF No. 27-4.)  Diaz was also convicted on two counts of using and

carrying a firearm during a crime of violence, both in violation of 18 U.S.C. § 924(c), for which

he was sentenced to consecutive five- and twenty-year terms of imprisonment to follow his

concurrent life terms.  (*Id.*)

Diaz's offense conduct arose from his involvement with a drug trafficking organization.

Diaz was hired as an enforcer for the organization in the summer of 1988.  (Presentence Rep. ¶

78, ECF No. 27-5.)  He was paid $1,000 a week to inspire fear in the organization's workers, and

to commit murders for the organization.  (*Id.*)  During his time as an enforcer, Diaz shot and

murdered two individuals at the request of the organization's leader, for which Diaz was paid

money and a small amount of cocaine.  (*Id.* ¶¶ 80–82, 84.)

Diaz was charged on the five counts describe above on April 11, 1991.  On June 18,

1992, following an eleven-day jury trial, Diaz was convicted on all five counts.  (Trial Tr.

1272:25–1273:14.)  He was sentenced on January 22, 1993.  (ECF No. 27-8.)

On February 4, 1993, Diaz filed a direct appeal of his conviction.  (ECF No. 15.)  The

Second Circuit rejected his appeal and affirmed his conviction on May 12, 1993.  *See United

States v. Diaz*, 996 F.2d 301 (2d Cir. 1993).  On February 4, 2013, Diaz moved to vacate his

sentence pursuant to 28 U.S.C. § 2255, arguing that the jury instruction regarding his VCAR

offenses incorrectly presumed that drug trafficking affects interstate commerce, instead of

requiring the jury to make that determination beyond a reasonable doubt.  (ECF No. 1, Case No.

13-CV-828.)  The Court denied his § 2255 petition on September 10, 2014.  (ECF No. 28.)  The

Second Circuit denied Diaz's motion for a certificate of appealability as to the Court's

September 10 ruling and dismissed the appeal of his § 2255 petition on March 20, 2015.  (ECF

No. 31.)

On May 3, 2022, the Court received the instant motion for compassionate release.  Diaz

seeks a reduction of his sentence to time served, arguing that: (1) he has rehabilitated himself; (2) his "aging medical problems" put him at heightened risk of COVID-19 at his detention facility, and thus warrant release; and (3) if he "were convicted today, he would only be subject to the 20-year statutory maximum relating to his convictions for second-degree murder." (Def.'s Mot. at 6–10, 18.) The Government filed its opposition to Diaz's motion on July 20, 2022. (*See* Gov't Opp'n.)

## LEGAL STANDARD

Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment "if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A). Three requirements must be met before a court grants such relief.

First, a petitioner must "fully exhaust[] all administrative" remedies in requesting relief from the Bureau of Prisons ("BOP"). *Id.* Second, a petitioner must show that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i), "and would not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). The Second Circuit has held that, pursuant to the First Step Act's revision of the compassionate release statute, district courts have "broad" discretion in determining what facts constitute "extraordinary and compelling reasons" justifying release. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Accordingly, courts are not limited to those circumstances specified in the Sentencing Commission guidelines. *Id.* Third, a court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). These factors include "the nature and circumstances of the offense and the history and characteristic of the defendant" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense."  18 U.S.C. § 3553(a).

## DISCUSSION

**I.      Diaz Has Not Fully Exhausted His Administrative Remedies**

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, permits a defendant to

move for compassionate release only "after . . . fully exhaust[ing] all administrative rights to

appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier[.]"  18 U.S.C. § 3582(c)(1)(A).  The Second Circuit has clarified that this exhaustion

requirement "is not a jurisdictional limitation on a court's power to consider an inmate's motion

for compassionate release," but is instead "a claim-processing rule that may be waived or

forfeited by the government."  *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).  A

district court, however, may not excuse a defendant's failure to comply at all with §

3582(c)(1)(A)'s mandatory exhaustion requirement if the government properly invokes it.[1]  *See,*

*e.g.*, *United States v. Ogarro*, No. 18-CR-373, 2020 WL 1876300, at *5 (S.D.N.Y. Apr. 14,

2020) (Sullivan, J.) (rejecting a defendant's argument that a court may unilaterally waive §

3582(c)'s exhaustion requirements where the defendant did not satisfy either of that provision's

exhaustion requirements).

Diaz has not provided any evidence that he has satisfied the statute's exhaustion

---

[1]      The Court is mindful that "district courts in this circuit have split on how to interpret [§ 3582(c)(1)(A)]'s
provision permitting an inmate to move for a sentence reduction 'after . . . the lapse of 30 days from the receipt' by
the warden of an inmate's request for the BOP to move on his behalf."  *Saladino*, 7 F.4th at 123 (quoting 18 U.S.C.
3582(c)(1)(A)).  Although some courts have concluded that this 30-day waiting period is applicable only when the
BOP does not respond to the defendant's request, others have concluded that this waiting period authorizes the
defendant to file a motion regardless of whether the warden responds to the defendant's request for compassionate
release.  *Id.*  This divergence in approach, however, does not apply where, as here, the defendant has made no effort
to request early release by the warden.

requirement.  He has not represented that he requested compassion release from the warden of

his facility.  *See* 18 § U.S.C. 3582(c)(1)(A).  He also has not presented any evidence of a failure

of the BOP to bring a motion on his behalf.  *Id.*  By contrast, the Government has invoked

exhaustion as an issue and has stated that "the BOP reports that it has no record of having

received any . . . request [for release]."  (Gov't Opp'n at 5.)  Accordingly, because Diaz has not

shown that he exhausted his administrative remedies, the Court must deny his motion.

## II.     Diaz Has Not Demonstrated "Extraordinary and Compelling" Reasons for Compassionate Release

Even if Diaz had complied with § 3582(c)(1)(A), his motion would fail on the merits.

Diaz argues that he should be released because: (1) he has rehabilitated himself; (2) he suffers

from "aging medical problems" that put him at heightened risk from COVID-19; and (3) if he

"were convicted today, he would only be subject to the 20-year statutory maximum relating to

his convictions for second-degree murder."  (Def.'s Mot. at 6–10.)  The Court addresses each of

these arguments in turn.

### A.  Diaz's Record of Rehabilitation

"Rehabilitation of the defendant alone shall not be considered an extraordinary and

compelling reason."  28 U.S.C. 994(t).  Rehabilitation in addition to other factors, however, may

contribute to a finding that "extraordinary and compelling" circumstances exist.  *Brooker*, 976

F.3d at 228.  An initial issue is thus whether Diaz's record of rehabilitation is sufficient to

support such a finding.

Diaz has not presented sufficient evidence of rehabilitation.  Unlike other defendants for

whom courts have reduced sentences, Diaz's disciplinary record reflects eighteen infractions

during his time in custody, including for assault as recently as 2015 and for using or possessing

banned substances.  (*See* Gov't Opp'n Ex. C.)  *Cf. United States v. Golding*, No. 05-CR-538,

5

2022 WL 2985014, at *4 (S.D.N.Y. July 27, 2022) (Rakoff, J.) (finding that defendant had presented "reasonably strong evidence of rehabilitation" because he had "had no disciplinary infractions in a decade" other than holding on to an MP3 player longer than permitted).  In addition, Diaz has not provided any evidence that he has been continuously employed, nor has he submitted letters attesting to his character, facts that courts have found tend to demonstrate rehabilitation.  *See Golding*, 2022 WL 2985014, at *3–4.

The Court commends Diaz for actively pursuing educational opportunities, as reflected in his transcript (*see* Gov't Opp'n Ex. D.), but his submissions do not sufficiently demonstrate a record of rehabilitation that warrants early release.

**B.  Diaz's Alleged Medical Problems**

Diaz argues that his "aging medical problems" and "declining health," in conjunction with the impact of COVID-19 on the conditions of his incarceration, constitute extraordinary and compelling reasons for early release.  (Def.'s Mot. at 8–9.)  Although Diaz does not specify the nature of his medical problems, his medical records indicate that he is obese and suffers from a history of substance abuse.  (Gov't Opp'n Ex. A at 11, 37.)  Importantly, however, Diaz is fully vaccinated against COVID-19.  (*Id.* at 49.)

Several courts in this circuit have concluded that "the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated."  *United States v. Jones*, No. 17-CR-214, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) (McMahon, J.) (collecting cases).  Moreover, the McCreary detention facility, where Diaz is incarcerated, currently reports only one active COVID-19 case among all inmates or staff.  *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus (last visited Nov. 18, 2022).  Accordingly, neither of Diaz's conditions, considered in the context of his

vaccination status and the COVID conditions at his facility, is a sufficiently extraordinary or

compelling reason to warrant his release.  *See, e.g.*, *United States v. Haney*, 454 F. Supp. 3d 316,

322-24 (S.D.N.Y. 2020) (Rakoff, J.) (denying release to a defendant with a history of substance

abuse who did not suffer from other health conditions that made him unusually vulnerable to

COVID-19); *United States v. Luviano*, No. 11-CR-1023, 2022 WL 4298696, at *2 (S.D.N.Y.

Sept. 19, 2022) (Crotty, J.) (finding only a "generalized risk of contracting COVID-19," where a

defendant was obese but vaccinated, "[which did] not suffice to reduce his sentence").

### C.  Whether *Booker* Affects Diaz's Life Sentences

Diaz argues that the Court should reduce his sentence because of "a change in sentencing

law."  (Def.'s Mot. 11.)  Construing his motion liberally, *see Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), Diaz asserts that he would benefit from the changes

brought about by *United States v. Booker*, 543 U.S. 220 (2005), which made the Sentencing

Guidelines advisory.  (Mot at 10–11, 16.)  Accordingly, he states that, if he were sentenced

today, "he would only be subject to the 20-year statutory maximum relating to his convictions

for second-degree murder."  (*Id.* at 10.)  This conclusion is incorrect.

As noted above, Diaz was convicted, among other offenses, on two counts of committing

murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959.  Pursuant to the current

version of § 1959, such an individual "shall be punished . . . by death or life imprisonment."  18

U.S.C. § 1959(a)(1).  Additionally, the relevant and current Sentencing Guidelines provide that,

> [i]n the case of a premeditated killing, life imprisonment is the appropriate
> sentence if a sentence of death is not imposed.  A downward departure would
> not be appropriate in such a case.  A downward departure from a mandatory
> statutory term of life imprisonment is permissible only in cases in which the
> government files a motion for downward departure for the defendant's
> substantial assistance, as provided in 18 U.S.C. § 3553(e).

U.S.S.G. §§ 2A1.1 cmt. n.1–2(A); 2E1.3(a)(2).  The Government did not move for a downward

departure pursuant to § 3553(e).  Accordingly, if Diaz were sentenced today, both the statute and

applicable Sentencing Guidelines would require the Court to impose the same sentences he is

now serving: two life sentences, with respect to his VCAR convictions.

**III.    The Section 3553(a) Factors Weigh Against Release**

A court may reduce a sentence after considering the § 3553(a) factors, to the extent they

are applicable, so long as the defendant has exhausted his administrative remedies and shown

"extraordinary and compelling" reasons for a reduction—which Diaz has not.  18 U.S.C. §

3582(c)(1)(A).  The factors in § 3553(a) are: (1) the nature and circumstances of the offense and

the history and characteristics of the defendant; (2) the need for the sentence to reflect the

appropriate purposes of punishment; (3) the kinds of sentences available; (4) the sentencing

guidelines range; (5) any policy statement by the Sentencing Commission; (6) the need to avoid

disparate sentences among similarly situated defendants; and (7) the need to provide restitution.

18 U.S.C. § 3553(a).

The sentencing factors in § 3553(a) weigh against early release.  Diaz shot and murdered

two people in the course of his involvement with a drug trafficking organization.  These are

extraordinarily serious offenses.  The Court's imposition of life sentences—in addition to being

required by law—serves the purposes of deterrence and protection of the public.  Moreover,

Diaz's conduct in custody detracts from his argument that the § 3553(a) factors would be served

by a reduced sentence.

Although Diaz's efforts toward rehabilitation are commendable, they do not sufficiently

mitigate the seriousness of his offenses to justify a sentence reduction.  The Court acknowledges

the difficulty of Diaz's incarceration, but he has failed to demonstrate that his early release

would be consistent with the factors in 18 U.S.C. § 3553(a).

**CONCLUSION**

For the reasons stated above, Diaz's motion is DENIED.

The Clerk is respectfully directed to close the motion at ECF No. 33 and to mail a copy

of this Opinion & Order to Diaz at the address he has provided in the letter at ECF No. 40, in

addition to any other address the Clerk may have on file for Diaz.

SO ORDERED.

Dated:  New York, New York
       November 21, 2022                                */s/ Kimba M. Wood*
                                                KIMBA M. WOOD
                                      United States District Judge